IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| MATTHEW J. KIDDER, | ) | |
|---|---|---|
| Petitioner, | ) | 8:19CV145 |
| v. | ) | |
| SCOTT R. FRAKES, the Director of the Nebraska Department of Correctional Services, | ) | MEMORANDUM AND ORDER |
| Respondent. | ) | |

Matthew J. Kidder (Petitioner or Kidder) has filed a habeas corpus petition claiming that he was convicted of murder and use of a weapon to commit a felony and sentenced to life in prison, plus a consecutive sentence for use of a weapon, because counsel was ineffective in various ways.

Respondent has filed a motion for summary judgment asserting that Petitioner's assertions of ineffective assistance of counsel are procedurally defaulted because, although some or all of those claims may have been raised in an unsuccessful post-conviction action before the state district court, Petitioner's appeal was dismissed as untimely. Therefore, Respondent argues that, having failed to give the Nebraska courts one complete round of review, Petitioner's claims have been procedurally defaulted without excuse. Petitioner responds by arguing, among other things, that if appeal was untimely it was not his fault.

I agree with Respondent that the motion for summary judgment must be granted due to procedural default and that Petitioner's excuses are not sufficient to avoid the procedural default. My reasoning follows.

## *Ineffective Assistance of Counsel*

Here is what I found were the ineffective assistance of counsel claims asserted by Kidder:

> **Claim One**: The Petitioner was denied effective assistance of counsel because defense counsel: (a) did not object to the state's use of contaminated DNA evidence; (b) did not object to contradictory testimony as to how, when, and where the white phone cord was taken into custody and processed; (c) failed to bring to the court's attention testimony regarding secondary transfer and how easily DNA evidence can be contaminated; (d) failed to expose Patricia Springborg's perjured testimony; (e) failed to challenge testimony regarding rigor mortis, lividity, and time of death; (f) failed to challenge the accuracy of agent Mark Sedwick's testimony who did not have his own report at time of testimony in front of him; (g) failed to expose Detective Ryan Deuiss's perjured testimony concerning alleged statements made by Petitioner during audio-video recorded interviews that went unproven by the state during trial.

Filing no. 7 at CM/ECF pp. 1-2.

## *The Overwhelming Evidence Against Kidder*

Because the "prejudice" prong of the "cause and prejudice" standard may be relevant, I next discuss the weight of the evidence.

Jessica Nelson's mother received a telephone call advising that Nelson had not shown up for work. Her mother went to Nelson's house to check on her and discovered Nelson's body partially submerged in the bathtub, unclothed, with the water running. She was curled up in a fetal position, and one hand was clutching a cell phone charging cord. Nelson's clothes were piled in the tub near her feet. Blood was pooled under Nelson's head, and there was a ligature mark on her neck. *State v. Kidder*, 908 N.W.2d 1, 4 (Neb. 2018).

In finding beyond a reasonable doubt that the error, if any, in failing to suppress evidence taken from a laptop, was harmless, the Nebraska Supreme Court detailed the overwhelming evidence again Kidder:

> The record in this case demonstrates that any error in overruling the motion to suppress and the motion in limine was harmless. Both motions related exclusively to evidence obtained from Kidder's laptop computer. That evidence showed that sometime between June 20 and July 17, 2015, Kidder used explicit terms to search with his laptop computer for violent pornographic videos depicting acts that were similar to the manner in which Nelson was killed. We must consider this evidence relative to the rest of the evidence of Kidder's guilt.
>
> First, there was uncontroverted physical evidence establishing Kidder's guilt. Kidder's DNA was found on Nelson's fingernails and on the cell phone cord used to strangle her. A few days after Nelson's body was discovered, Kidder was observed to have a cut on his hand consistent with a fingernail mark, and when Nelson's body was discovered, her thumbnail was bent back.
>
> Next, there was detailed evidence of a confession. Kidder's cellmate testified that Kidder confessed to Nelson's murder. The cellmate's credibility was strengthened by the fact that he knew details about the crime and the crime scene that had not been released to the public.
>
> Finally, in addition to the physical evidence and the confession, there was considerable circumstantial evidence establishing Kidder had both the motive and the opportunity to commit the crimes. Kidder left work shortly before the crimes occurred, and cell site location information placed his cell phone in the vicinity of Nelson's home around the time she was assaulted and strangled. Kidder also admitted to his father, in a recorded telephone conversation, that he was at Nelson's house for about 20 minutes on the night of the murder. Kidder admitted to investigators he wanted to "see [Nelson] naked," and Kidder's text messages to Nelson contained sexual overtures that were either rebuffed or ignored. There was evidence that in 2008, Kidder had

choked and sexually assaulted a friend after she allowed him into her home. Likewise, Nelson was a friend of Kidder's and there were no signs of forced entry into Nelson's home.

The untainted, relevant evidence of Kidder's guilt was overwhelming, and the laptop computer evidence was cumulative of other relevant evidence tending to prove motive. Thus, even if the evidence obtained from Kidder's laptop computer was erroneously admitted at trial, we find the guilty verdicts were surely unattributable to that evidence. Any error in admitting the evidence from Kidder's laptop computer was harmless beyond a reasonable doubt. We therefore reject both of Kidder's assignments of error and affirm his convictions.

*Id.* 908 N.W.2d at 10.

### *Undisputed Facts*

1. On September 4, 2015, the State charged Petitioner with First Degree Murder (a Class IA felony) and Use of a Deadly Weapon to Commit a Felony (a Class II felony). Filing no. 13-4 at CM/ECF pp. 1-2. The charges were in relation to the killing of Jessica Nelson on or about June 25, 2015. Filing no. 13-4 at CM/ECF pp. 1-2.

2. Petitioner was represented by several county public defenders. Filing no. 13-4 at CM/ECF p. 9. Following a trial, a jury found Petitioner guilty of both charges. Filing no. 13-1 at CM/ECF p. 2; Filing no. 13-4 at CM/ECF pp. 3-8. The state district court subsequently sentenced Petitioner to life in prison on the murder conviction. After first imposing a sentence of 50 to 50 years on the use of a weapon charge, the trial judge changed the sentence to 20 to 20 years of imprisonment on the use of a weapon conviction to be served consecutively. After a bench conference, the trial judge thought she had erred in imposing the 50-year sentence. She thought, erroneously as it turns out, that the statutory maximum sentence was 20 years. Accordingly, she changed her sentence from 50 to 20 years. *Kidder*, 908 N.W.2d. at

11. As will be seen, the trial judge erred when she tried to change the sentence since the original 50-year sentence was proper when pronounced and could not be changed after once pronounced. *Id*.

3.   On November 30, 2016, Petitioner appealed. Filing no. 13-1 at CM/ECF p. 9; Filing no. 13-2. As was true at trial, Petitioner was represented by several county public defenders. Filing no. 13-7 at CM/ECF p. 2; *Kidder*, 908 N.W.2d at 3.

4.   On March 9, 2018, the Nebraska Supreme Court affirmed Petitioner's convictions and the murder sentence but found plain error in the use of a weapon sentence. Filing no. 13-7; *Kidder,* 908 N.W.2d. at 12. It therefore vacated that sentence and remanded with directions to institute the 50-year sentence on the use of a weapon sentence. *Id.*

5.   On May 7, 2018, after the remand had been complied with, Petitioner filed a motion for post-conviction relief in the state district court. Filing no. 13-5 at CM/ECF pp. 1-4. He asserted ineffective assistance of counsel claims. On June 21, 2018, the state district court denied Petitioner's post-conviction motion without an evidentiary hearing observing that Petitioner had failed to explain in sufficient detail how he was prejudiced. Filing no. 13-5 at CM/ECF pp. 5-8. On July 11, 2018, Petitioner filed a "Motion For Reconsideration Of Order Denying PostConviction Relief." Filing no. 13-5 at CM/ECF pp. 9-10. On August 7, 2018, the state district court denied that motion. Filing no. 13-5 at CM/ECF p. 11.

6.   Thereafter, on August 20, 2018, Petitioner filed his notice of appeal, and then on September 14, 2018, he filed his poverty affidavit. Filing no. 13-1 at CM/ECF p. 6; Filing no. 13-3; Filing no. 13-6.

7.   On December 31, 2018, Respondent moved for summary dismissal, on the ground that Petitioner had not timely appealed. Filing no. 13-6. On February 4,

2019, the Nebraska Supreme Court sustained Respondent's motion and dismissed Petitioner's appeal. Filing no. 13-3 at CM/ECF p. 4.

8. On April 19, 2019, Petitioner filed his properly signed habeas petition in this court. Filing no. 1; Filing no. 1-1.

9. I take judicial notice of the facts recited by the Nebraska Supreme Court quoted above to the extent those facts are relevant to determining whether Petitioner can provide an excuse for procedural default.[1]

## *Law Of Procedural Default*

I start with a brief recitation of the law of procedural default. As set forth in 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

---

[1] *See Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (court may take judicial notice of public records); Federal Rule of Evidence 201 (providing for judicial notice of adjudicative facts).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state appellate courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to *either* the Nebraska Supreme Court directly[2] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

Under Nebraska law, you don't get two bites of the post-conviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate

---

[2] Where a life sentence has been imposed in a criminal case the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106 (West).

state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be more precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (Defense counsel's failure to file timely notice of appeal with regard to petitioner's state court appeal did not constitute "cause" that excused procedural default, so as to permit federal habeas review). If a petitioner is actually, meaning factually, innocent that is the type of miscarriage of justice that could warrant excusing the procedural default. *See*, *e.g.*, *Dansby v. Hobbs*, 766 F.3d 809, 840 (8th Cir. 2014).

Regarding the issue of "cause," such "[c]ause must be 'something *external* to the petitioner, something that cannot fairly be attributed to him.'" *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (quoting *Coleman*, *supra*). To establish "actual prejudice," a petitioner must show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). As regards a claim of actual innocence and thus a miscarriage of justice, a petitioner "must present new reliable evidence that he was innocent of the crime of which he was convicted." *Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010).

## *Perfection of Appeals in Nebraska*

In Nebraska, to perfect an appeal from the denial of post-conviction relief two things must occur in a timely manner to vest jurisdiction in a Nebraska appellate court. *See* Neb. Rev. Stat § 25-1912 (West). First, a notice of appeal must be filed with the clerk of the district court within 30 days of the rendition of judgment. And, second, assuming the offender is a pauper, a poverty affidavit must filed within 30 days of the rendition of judgment.

The Nebraska Supreme Court has strictly construed these requirements. There are four rules that are particularly applicable to this case, and they are:

> 1. When dealing with a post-conviction appeal and the required notice of appeal, the Nebraska Supreme Court has said that "an order denying an evidentiary hearing on a postconviction claim is a final judgment as to that claim. . . . . [A] notice of appeal must be filed on those postconviction claims within 30 days." *State v. Alfredson*, 842 N.W.2d 815, 820 (Neb. 2014) (footnote omitted).

> 2. Moreover, regarding the required poverty affidavit, and in a post-conviction appeal, the Nebraska Supreme Court has made clear that a poverty affidavit is insufficient to perfect appeal unless it is filed during the 30-day period following rendition of judgment. *State v. Parmar*, 586 N.W.2d 279, 282 (Neb. 1998) ("The Nebraska Supreme Court has no power to exercise appellate jurisdiction in proceedings to review the judgment of the district court unless the appellant shall have filed a notice of appeal and deposited a docket fee in the office of the clerk of the district court within the time fixed and as provided in § 25-1912. . . . When a poverty affidavit is substituted for the docket fee, it must be filed within the time and in the manner required for filing the docket fee.") (citations omitted).

> 3. Still further, the Nebraska Supreme Court has refused to adopt the "prison mail box" rule. *Id.* 586 N.W.2d at 284 ("Thus, there is no statutory basis on which to conclude that the 'prison delivery rule' applies in Nebraska. . . . We decline to adopt the 'prisoner delivery rule'

and conclude that prisoners acting pro se are subject to the same filing rules as other litigants.")

4. "A motion for reconsideration [of an order denying post-conviction relief] does not terminate the time for appeal and is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment. In some contexts, a motion for reconsideration may also be treated as a motion to alter or amend a judgment for purposes of terminating the appeal period under Neb. Rev. Stat. § 25-1329 (Reissue 2016)[³]. In order to qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek substantive alteration of the judgment." *State v. Lotter*, 917 N.W.2d 850, 859 (Neb. 2018) (footnotes in original omitted) , *cert. denied*, 139 S. Ct. 2716 (2019).

### *Analysis*

Petitioner has filed a response in the form of a brief. Filing no. 15. He has not requested the opportunity to submit evidence by way of affidavit. To the extent, if at all, that there are specific facts recited in the brief, as opposed to conclusions, I take those facts to be true.

Initially, Petitioner asserts that he did not procedurally default his claims because he filed a notice of appeal and a poverty affidavit and the Clerk of the Supreme Court accepted those submissions. However, under Nebraska law the lateness of his filings precluded the Nebraska Supreme Court from considering his appeal. According to the regularly applied statute and precedents of the Nebraska Supreme Court, the Court lacked jurisdiction over the attempted appeal.

---

³Neb. Rev. Stat. § 25-1329 (West) provides: "A motion to alter or amend a judgment shall be filed no later than ten days after the entry of the judgment. A motion to alter or amend a judgment filed after the announcement of a verdict or decision but before the entry of judgment shall be treated as filed after the entry of judgment and on the day thereof."

Next, Petitioner asserts that he relied on an inmate legal aid when he filed the motion for reconsideration on July 11, 2018, and Petitioner implicitly suggests that he did not know that the district court's denial of his post-conviction motion on June 21, 2018 started the time for appeal. However, Petitioner's reliance on an inmate legal aid was a choice Petitioner made on his own. Therefore, it is not "cause" for the default. *See*, *e.g.*, *Maples v. Thomas*, 565 U.S. 266, 281 (2012) ("[W]hen a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause."); *Mason v. Boyd*, No. 4:18CV3139, 2019 WL 692943 at *3 (D. Neb., February 19, 2019) (inmate legal aid's erroneous advice is not "cause" as petitioner elected to rely on the legal aid).[4]

Two secondary observations are in order. First, the motion for reconsideration, even if construed as a motion to alter or amend a judgment, was filed outside the 10-day period provided in Neb. Rev. Stat. § 25-1329. The motion was filed on July 11, 2018. The order denying post-conviction relief was filed on June 21, 2018. Second, even if Petitioner's attempted appeal was construed to pertain to the order denying the

---

[4] I do not believe *Martinez v. Ryan*, 566 U.S. 1 (2012), or *Trevino v. Thaler*, 569 U.S. 413 (2013), apply in Nebraska. This is because Nebraska demands that ineffective assistance of trial counsel claims be raised on direct appeal when appellate counsel is different than trial counsel. *State v. Filholm*, 848 N.W.2d 571, 576 (Neb. 2014). But even if those cases did apply generally, they don't pertain to cases like this one involving a procedural default occurring at the *appellate stage* when the prisoner has been heard by the state post-conviction trial judge. *Williams v. Kenney*, No. 4:13CV3170, 2014 WL 5107145 at *6 (D. Neb. Oct. 10, 2014). My decision in *Williams* is consistent with Circuit precedent. *See Arnold v. Dormire*, 675 F.3d 1082, 1086-88 (8th Cir. 2012) (concluding *Martinez* does not apply where ineffective assistance of trial counsel claims were litigated in an initial-review collateral proceeding, but not preserved on appeal; "The Court made clear that the holding in *Martinez* did not 'concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . .'") (citing and quoting *Martinez*, 566 U.S. at 16).

motion for reconsideration issued on August 7, 2018, since his poverty affidavit was not filed until September 14, 2018, such an appeal would have been untimely as well.

Petitioner also asserts that "cause" for the delay in filing the poverty affidavit resulted from his lack of knowledge about the requirement that he must file such an affidavit. He explains that it was not until August 23, 2018, when he received a letter from the Clerk of the Supreme Court that he realized he was required to file such a paper. He goes on, asserting that there was a delay in getting a notarized statement from the inmate accounting office regarding the status of his prison "bank" account and that after that there was a delay because Petitioner did not have immediate access to the prison law library where someone was available to notarize his personal affidavit.

There are several responses to Petitioner's arguments about the tardy poverty affidavit that was submitted on September 14, 2018. Initially, even if the poverty affidavit had been filed within the time required, Petitioner's notice of appeal was untimely regarding the denial of relief issued on June 21, 2018, and that alone prevented the Nebraska Supreme Court from taking the case. Furthermore, Petitioner's ignorance of the required poverty affidavit provides no external impediment that could be construed as "cause." Still further, Petitioner's general and nonspecific allegations about the time it took him to get his inmate account statement or access to a notary public are not backed up in his brief by any specific facts (like "kite" dates) and thus provide no basis for finding a sufficient external impediment that would suffice as "cause."

Next, regarding the issue of "prejudice" Petitioner makes no attempt to explain the basis for his claim of "prejudice." That is, Petitioner simply wants me to assume that his mere assertions of ineffective assistance of counsel are sufficient to show "prejudice" and thus excuse his default. I am unwilling to make that leap particularly where as here the evidence against him was found to be overwhelming by the Nebraska Supreme Court.

Lastly, Petitioner has not come close to showing that he is "actually innocent." Indeed, he appears not to even make such an argument.

In short, Petitioner has procedurally defaulted his claims. He has provided no basis to excuse the procedural default.

### *No Certificate of Appealability*

Finally, a petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). I have applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that the habeas corpus petition, Filing no. 1, is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

DATED this 29th day of August, 2019.

BY THE COURT:

*s/ Richard G. Kopf*
Senior United States District Judge